**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cr-00094-TWP-TAB |
| | ) |
| JOSEPH CHASE WINKLE, JEREMY GIBSON, JOSEPH KREJSA, and COREY POSEY, | ) ) ) |
| | ) |
| Defendants. | ) |

**ENTRY ON DEFENDANT GIBSON'S RENEWED MOTION TO SEVER**

This matter is before the Court on Defendant Jeremy Gibson's ("Gibson") Renewed Motion to Sever and Request for Hearing (Filing No. 113). Gibson seeks a severance of his trial from the other Defendants in this case, Joseph Chase Winkle ("Winkle"), Joseph Krejsa ("Krejsa") and Corey Posey ("Posey"). For the reasons explained below, Gibson's renewed request for severance and for a hearing is **denied**.

**I.   DISCUSSION**

This case involves six separate incidents in which Muncie Police Department ("MPD") officers allegedly used excessive force and/or wrote false reports about those uses of force. Defendants Winkle, Posey and Gibson were employed as officers with MPD and Krejsa was a sergeant of MPD. This matter is scheduled for trial by jury on January 24, 2022. The instant Motion is Gibson's second attempt to get his trial severed from that of his co-defendants. On November 10, 2020, the Court determined that severance was not necessary, in part because Gibson had not established prejudice that would strip him of a fair trial. (Filing No. 60.) The Court explained that although the jury will hear evidence that does not apply to Gibson, the Court

will instruct the jury to consider only evidence relevant to Count One as applicable to Gibson. *Id*. But as noted by Gibson, the posture of this case has changed significantly since that order was issued.

The Government has superseded and the Superseding Indictment charges 17 counts rather than 12, and adds an additional co-defendant: Posey. (Filing No. 64.) Gibson is now charged in three counts, which cover two incidents instead of one. The other Defendants are charged throughout the remaining 14 counts, involving four other unrelated incidents. Gibson argues that "[e]ven with the clearest limiting instructions, it would be unreasonable to expect the jury to be able to separate the evidence as to Mr. Gibson from the additional 14 counts for which he is not charged." (Filing No. 113 at 1-2.)  He points out that there is no conspiracy or common scheme charged in this case, and asserts the prejudicial effect of evidence admissible as to only one or a few defendants may have a "spillover" effect on the jury's consideration of the government's case against him. *Id*. at 5. Gibson contends the Response to Resistance reports allegedly falsified by his co-defendants--which implicate Gibson by referencing his participation in the incidents--should not be introduced in a joint trial, under *Bruton*. *Id*. at 12. In a very long footnote, Gibson details portions of the Response to Resistance report on the L.G. arrest, which he contends will violate his Sixth Amendment right to confront witnesses against him, if the statements of any non-testifying co-defendants are admitted at trial. *Id* at 11, 12. He also argues that the ongoing pandemic poses serious health risks and logistical burdens to trying a multi-defendant, multi-week case with Government and defense lawyers who must travel from across the country to be present at trial. *Id*.

In its Response in Opposition, (Filing No. 122), the Government explains the allegations of the Superseding Indictment as follows:

>The lead counts (Counts One through Five) involve the conduct of all four defendants in connection with the arrest of L.G. on August 9, 2018. Counts One and Two charge Defendants Winkle and Gibson, respectively, with using unreasonable force during the arrest of L.G. in violation 18 U.S.C. § 242. Specifically, Defendant Winkle is charged with using his knee to strike L.G.'s head and neck, and Defendant Gibson is charged with stomping on and using knee strikes against L.G.'s head, all without legal justification. Counts Three, Four and Five charge defendants Winkle, Posey, and Krejsa, respectively, with writing false reports about this incident, in violation of 18 U.S.C. § 1519.
>
>Counts Six through Eight allege that on June 5, 2018, Defendant Winkle used unreasonable force during the arrest of N.B. by kicking and striking N.B. in the head, and that he and Defendant Krejsa then wrote false reports about the incident. Counts Nine and Ten allege that on March 27, 2018, Defendant Winkle used unreasonable force during the arrest of I.P. by kicking I.P. in the head, and then writing a false report regarding the incident. Count Eleven alleges that on May 22, 2018, Defendant Winkle wrote a false report concerning his arrest of D.E. Counts Twelve and Thirteen allege that on February 17, 2019, Defendant Winkle used unreasonable force during the arrest of B.B. by punching and knee-striking B.B., and then wrote a false report about the incident.
>
>Finally, Counts Fourteen through Seventeen involve the conduct of both Defendants Winkle and Gibson in connection with the arrest of E.M. on May 13, 2018. Counts Fourteen and Fifteen charge Defendants Winkle and Gibson, respectively, with using unreasonable force, while aided and abetted by one another, during the arrest of E.M. in violation 18 U.S.C. §§ 242 and 2. Specifically, Defendants Winkle and Gibson are charged with using hand and knee strikes against E.M.'s head area, resulting in bodily injury to E.M. Counts Sixteen and Seventeen charge Defendants Winkle and Gibson, respectively, with writing false reports about this incident, in violation of 18 U.S.C. § 1519.

([Filing No. 122 at 3-4](#).)

The Government argues the charges against Gibson are intricately interwoven with several of the charges against his co-defendants. In particular, Gibson is charged for his actions in connection with the arrests of L.G. and E.M., both of whom suffered serious injury, allegedly at the hands of Gibson and Winkle. These arrests are at the center of Counts One through Five and Fourteen through Seventeen. The Government concedes that the other four incidents – addressed in Counts Six through Twelve–do not implicate Gibson, and arise from distinct incidents. However, because all of the incidents are recorded in whole or in part on video, the jury will be

able to clearly separate its consideration of evidence regarding the co-defendants, from its determination of Gibson's guilt or innocence.

With respect to Gibson's argument that the introduction of his co-defendants' use of reports at trial would violate the Confrontation Clause and *Bruton v. United States*, 391 U.S. 123 (1968), the Government asserts that "Gibson has failed to identify any statements in the Response to Resistance reports that even plausibly could be read to directly incriminate him." (Filing No. 122 at. 17.) The Government contends that the reports written by Gibson's co-defendants are not incriminating at all, rather they are "falsely exculpatory, which is why they are the subject of separate obstruction of justice charges in the Superseding Indictment". *Id.* The Government explains that if Gibson can identify specific, prejudicial statements contained in these reports, any such statements could be easily redacted and paired with a clear limiting instruction from the Court. *Id*. The Government concludes their argument by asking the Court to again deny Gibson's motion to sever his trial from the trial of his co-defendants because the Superseding Indictment properly joins all four defendants and because there is no serious risk that a joint trial would unfairly prejudice him.

Federal Rule of Criminal Procedure 8(b) ("Rule 8(b)") provides for the joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The district court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The United States Supreme Court has instructed federal courts to interpret the requirements of Rule 8(b) liberally in favor of joinder. *Id.* at 537. Rule 8(b) is designed to promote judicial economy and

efficiency and to avoid a multiplicity of trials, but only so long as these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial. *Id.* at 540.

Federal Rule of Criminal Procedure 14 ("Rule 14") allows the district court to sever a defendant's trial if joinder appears to prejudice the defendant, and the defendant bears the heavy burden of making "'a strong showing of factually specific and compelling prejudice' that will 'mislead or confuse the jury.'" *United States v. Dixon*, 2015 U.S. Dist. LEXIS 65126, at *2 (S.D. Ind. May 19, 2015) (quoting *United States v. Moore*, 917 F.2d 215, 221 (6th Cir. 1990)); *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999) ("defendant seeking severance at trial from co-defendants bears a strong burden and must demonstrate substantial, undue, or compelling prejudice"). The district court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro* at 539. That risk is present, the Supreme Court has explained, if: (1) highly prejudicial evidence that is probative of the defendant's guilt is admitted solely against a co-defendant, (2) many defendants are tried together in a complicated case where the defendants have markedly different degrees of culpability, or (3) "essential exculpatory evidence" for one defendant would be admissible in a solo trial but unavailable in a joint trial. *Id*. In such cases, "'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id*.

The Court again determines that Gibson has not established prejudice that would strip him of a fair trial. For severance under Rule 14(a), a defendant "must be able to show that the denial of severance caused him actual prejudice in that it prevented him from receiving a fair trial." *United States v. Carter*, 695 F.3d 690, 700–701 (7th Cir. 2012). Although the jury will hear evidence that does not apply to Gibson, the Court will instruct the jury to consider only evidence

relevant to the counts applicable to Gibson.  *Id*. at 701 (even if the defendants can show prejudice, that alone may not necessarily suffice for them to prevail; limiting instructions will often cure any risk of prejudice, and tailoring relief from prejudice is within the district court's discretion.)  *Id*. at 701.

The Court rejects Gibson's assertion that the evidence against Winkle will create an unacceptably high inference of wrongdoing against Gibson—such that cautionary instructions will not suffice.  Although Gibson's involvement and alleged degree of culpability differs significantly from that of Winkle, who is charged in 11 of the 17 counts in the Superseding Indictment, a jury should be able to clearly separate and evaluate the action of each defendant during the relevant incidents.  As argued by the Government, "the number of defendants (four) is limited, and each of the incidents is recorded on body camera footage that captured the specific and independent actions of each defendant."  ([Filing No. 122 at 11](Filing No. 122 at 11).)  *See United States v. Gaviria*, 116 F.3d 1498, 1533 (D.C. Cir. 1997) (noting that a low number of defendants and the existence of recordings minimize the risk of juror confusion).

With respect to Gibson's concerns regarding spillover evidence, courts in the Seventh Circuit have repeatedly rejected the evidentiary spillover theory as a basis for severance, finding it insufficient to establish prejudice that would undermine the fairness of the trial.  *United States v. Thornton*, 197 F.3d 241, 255-56 (7th Cir. 1999) (finding that the defendant failed to identify any prejudicial spillover evidence, despite his argument that only a fraction of the evidence at trial pertained to him); *see also United States v. Abdelhaq*, 246 F.3d 990, 992 (7th Cir. 2001).  That the jury will hear evidence against different, non-conspiratorial defendants involved in completely different incidents in and of itself is not grounds for severance.  As noted above, when these risks are present, "less drastic measures [than severance], such as limiting instructions, often will suffice

to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.  Here, a limiting instruction can ameliorate any potential undue prejudice arising from a joint jury trial.

A limiting instruction can also be given to cure any potential prejudice should the Government seek introduction of any co-defendants' reports or statements which Gibson believes implicate *Bruton*.  The Court will also consider a motion to exclude or redact any significantly inculpatory statements about Gibson should he identify any particular statements.

Despite the additional charges and defendant, the Court continues to believe that in this case, judicial economy favors a joint trial.  The evidence in several counts requires testimony from the same witnesses.  A joint trial will reduce not only the expenditure of judicial, prosecutorial and defense attorney time, but it will ensure that witnesses need not testify at multiple trials. Gibson's concerns about conducting a jury trial during the pandemic are well taken. The Court has developed a COVID protocol for jury trials which has been quite successful.  In fact, the Court recently conducted a five defendant jury trial on multiple counts of wire fraud affecting a financial institution and conspiracy to commit wire fraud affecting a financial institution. *See United States v. Agee, Isley, Smith Griffin and Smith*, 1:19-cr-00103-TWP-DLP.  At the final pretrial conference, the Court will discuss the COVID protocol and logistics for a safe jury trial despite the pandemic. In weighing the public interest in efficiency, economy (and safety)—by having one trial as opposed to two--against the possibility of undue prejudice to Gibson, the Court concludes that principles of judicial economy and fairness weigh against severance in this case. *See Donovan,* 24 F.3d at 914-15; *United States v. Hanhardt*, 151 F. Supp. 2d 971, 974 (N.D. Ill. 2001).

Finally, the Court again acknowledges that it "has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *United States v. Johnson*, 478 F.2d 1129, 1132 (5th

7

Cir. 1973) (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)). But at this stage of the proceedings, severance is not warranted and the renewed request for severance is **denied**.

## II. CONCLUSION

For the reasons stated above, Gibson's Renewed Motion to Sever and Request for Hearing, ([Filing No. 113](#)), is **DENIED**.

**SO ORDERED.**

Date: 11/4/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David Oscar Markus
MARKUS/MOSS PLLC
dmarkus@markuslaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
jfk@rkblegalgroup.com

Martin Austin Brown
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
mab@rkblegalgroup.com

Daniel E. Pulliam
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
daniel.pulliam@faegredrinker.com

Yasmin N. Best
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
yasmin.best@faegredrinker.com

Joshua James Burress
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
joshua.burress@dentons.com

K. Michael Gaerte
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
michael.gaerte@dentons.com

Katherine Gray DeVar
U.S. DEPARTMENT OF JUSTICE
katherine.devar@usdoj.gov

Mary J. Hahn
U.S. DEPARTMENT OF JUSTICE
mary.hahn@usdoj.gov

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov